**Wanda PEARCE, Plaintiff-Appellee,**

v.

**WICHITA COUNTY, CITY OF WICHITA FALLS, TEXAS, HOSPITAL BOARD, Defendant-Appellant.**

**No. 76–4269.**

United States Court of Appeals, Fifth Circuit.

Feb. 22, 1979.

Rehearing Denied March 21, 1979.

Roger Lee, Wichita Falls, Tex., for defendant-appellant.

Barbara C. Crampton, Holly Crampton, Wichita Falls, Tex., for plaintiff-appellee.

Before INGRAHAM, GEE and FAY, Circuit Judges.

INGRAHAM, Circuit Judge:

This is an appeal from a judgment against a state hospital for violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (1976). Appellant Wichita General Hospital[1] was held liable to appellee Wanda Pearce, appellant's former Credit Manager, for pay discrimination on the basis of sex. Appellant urges reversal on three grounds: (1) that the Equal Pay Act cannot constitutionally apply to state entities; (2) that the evidence was insufficient to support the jury verdict; and (3) that the district court abused its discretion in awarding liquidated damages. We affirm.

Mrs. Pearce was hired by the hospital as a part time Credit Clerk in 1963. She continued in that capacity until 1969, when she became a full time Credit Clerk. From 1964 to 1966, Mrs. Pearce was supervised by Mr. Alvah Conner who held two titles: Business Manager and Credit Manager. His salary was $700 per month for half days. From 1966 to 1968, Mrs. Pearce was supervised by Mr. Norman Marquart, whose sole title was Credit Manager. During his tenure, Mr. Marquart's salary increased from $525 to $575 per month. From 1968 to 1970, Mr. Conner resumed his supervisory role as both Business Manager and Credit Manager at a salary of $750 per month for half days.

Appellee was promoted to Credit Manager on November 16, 1970, at a starting salary of $385 per month. Her salary was $540 per month at the time of her discharge on March 3, 1975.

On April 3, 1975, Mr. Nelson Bobby Martin succeeded Mrs. Pearce as Credit Manager at a starting salary of $850 per month. By October 1976, Mr. Martin was earning $1100 per month.

On January 8, 1976, Mrs. Pearce filed a complaint against Wichita General Hospital, its Business Manager, Mr. Douglas Tritton, Administrator, Mr. W. Clay Ellis, and Chairman of the Board of Directors, Dr.

1. Although appellant is commonly known as Wichita General Hospital and was so identified throughout this action, an order amending judgment was entered December 28, 1976, designating appellant by its true name, Wichita County, City of Wichita Falls, Texas, Hospital Board. Appellant is a joint county-city hospital under Tex.Rev.Civ.Stat. art. 4494i-1 (1976).

Philip Carpenter, alleging wrongful termination under the Age Discrimination in Employment Act, 29 U.S.C. § 626(b) (1976), and pay discrimination on the basis of sex while employed as Credit Manager in violation of the Equal Pay Act, 29 U.S.C. § 206(b) (1976). Defendants filed a motion to dismiss the Equal Pay Act claim for failure to state a claim, urging that the Age Discrimination in Employment Act and the Equal Pay Act did not apply to state hospitals by virtue of *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The motion was denied and the case proceeded to trial.

After the court denied defendants' motion for directed verdict, the jury found no liability under the Age Discrimination in Employment Act but did find liability under the Equal Pay Act and awarded $7460 in damages. The court denied defendants' motion for judgment notwithstanding the verdict. On December 7, 1976, the district court entered judgment against Wichita General Hospital on the jury verdict, awarding $7460 in actual damages, an equal amount in liquidated damages pursuant to 29 U.S.C. §§ 216(b), 260 (1976), and $4500 in attorney's fees and costs. The action was dismissed as to the individual defendants.

■ The appellant hospital's threshold argument is that the Equal Pay Act cannot constitutionally be applied to state governmental entities because of *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). *National League of Cities* held that insofar as the 1974 amendments to the Fair Labor Standards Act extending the Act's minimum wage provision to state employees "operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress by Art. I, § 8, cl. 3." *Id.* at 852, 96 S.Ct. at 2474. Determination of minimum wages and maximum hours were held to be

reserved to the states and their subdivisions as employers under the Tenth Amendment as "functions essential to [their] separate and independent existence." *Id.* at 845, 96 S.Ct. at 2471. Thus, "employers" for purposes of the minimum wage law do not include states or their subdivisions.

Appellant urges that *National League of Cities* be extended to bar the application of the Equal Pay Act amendments to state employers.[2] In essence, appellant's argument is that since the minimum wage provision and equal pay provision are both in the Fair Labor Standards Act, the coverage of the two provisions is co-extensive. Since states and their subdivisions are not "employers" for purposes of the minimum wage provision, the argument continues, neither should they be "employers" for purposes of the Equal Pay Act. Two federal district courts have adopted this position. *Usery v. Owensboro-Daviess County Hospital*, 423 F.Supp. 843, 846 (W.D.Ky.1976); *Howard v. Ward County*, 418 F.Supp. 494, 500 (D.N.D. 1976).

■ Appellant's argument overlooks the severability clause in the Fair Labor Standards Act:

If any provision of this chapter or the application of such provision to any person or circumstance is held invalid, the remainder of this chapter and the application of such provision to other persons or circumstances shall not be affected thereby.

29 U.S.C. § 219 (1976). In construing a similar provision in the Public Utility Act of 1935, the Supreme Court stated:

This provision reverses the presumption of inseparability [and] establish[es] the opposite presumption of divisibility. Congress has thus said that the statute is not an integrated whole, which as such must be sustained or held invalid. On the contrary, when validity is in question, divisibility and not integration is the guiding principle. Invalid parts are to be excised and the remainder enforced.

---

**2.** As enacted in 1963, the Equal Pay Act was inapplicable to state and local governments. In 1966, coverage was extended to employees of state and local hospitals, institutions, schools,

and public transit. In 1974, coverage was further extended to virtually all public employees, except public office holders and their staffs.

*Electric Bond & Share Co. v. SEC*, 303 U.S. 419, 434, 58 S.Ct. 678, 683, 82 L.Ed. 936 (1938) (citations omitted). The presumption of divisibility created by the severability clause is especially proper with regard to the Equal Pay Act, because it has its own legislative history,[3] was added to the Fair Labor Standards Act primarily for administrative convenience,[4] and effectuates policies different from those served by the minimum wage law.

Moreover, the holding of *National League of Cities* is narrow. *National League of Cities* did not hold that Congress lacked the affirmative authority to legislate wages of state employees under the commerce clause, but that the Tenth Amendment prohibited the Congress from exercising such commerce clause power. The Court made clear that the Tenth Amendment does not always bar Congress from exercising its commerce clause power to regulate the states by expressly reaffirming *Fry v. United States*, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975), which had upheld the temporary freeze on wages of state and local government employees under the Economic Stabilization Act of 1970. 426 U.S. at 852, 96 S.Ct. 2465.

■ We follow the prevailing view in refusing to extend *National League of Cities* to the Equal Pay Act. The Equal Pay Act, unlike the minimum wage provision, does not "displace the State's freedom to structure" the delivery of its services or employer-employee relationships. The Equal Pay Act leaves the states free to set all substantive terms of employment, provided that men and women receive equal compensation for equal work. The ability to pay female employees wages less than those paid to male employees for equal work is not among the "functions essential to [the] separate and independent existence" of the states. *National League of Cities*, 426 U.S. at 845, 96 S.Ct. at 2471. We therefore hold that the extension of the Equal Pay Act to the states and their political subdivisions is a valid exercise of Congress' power under the commerce clause and that the Tenth Amendment does not bar the exercise of that power.[5]

■ Appellant's alternative argument for reversal is that the evidence of an Equal Pay Act violation is insufficient to support the jury verdict. In reviewing the sufficiency of the evidence, we are obligated to consider the evidence and all reasonable inferences in the light most favorable to

3. See Hearings Before the House Subcomm. on Labor on H.R. 3861, and Related Bills, 88th Cong., 1st Sess. (1963); Hearings Before the Senate Subcomm. on Labor on S. 882 and S. 910, 88th Cong., 1st Sess. (1963).

4. H.R.Rep.No.309, 88th Cong., 1st Sess. (1963), U.S.Code Cong. & Admin.News 1963, pp. 687, 688, states in part:

> Because of the long history and experience of Government and business and workers with the Fair Labor Standards Act, a simple expansion of that act to include the equal pay concept offers the most efficient and least difficult course of action. * * * First, it eliminates the need for a new bureaucratic structure to enforce equal pay legislation; and second, compliance should be made easier because both industry and labor have a long-established familiarity with existing fair labor standards provisions.

5. In so holding, we join the Court of Appeals for the Seventh Circuit. *Marshall v. City of Sheboygan*, 577 F.2d 1 (7th Cir. 1978). *Accord, Christensen v. State of Iowa*, 417 F.Supp. 423 (N.D.Iowa 1976).

A number of courts have upheld the application of the Equal Pay Act to the states on alternative grounds: the commerce clause and § 5 of the Fourteenth Amendment. Since we find the Equal Pay Act constitutional under the commerce clause, we find it unnecessary to consider other constitutional sources of legislative power. However, we note that the Courts of Appeals for the Third and Fourth Circuits have upheld the application to the states of the Equal Pay Act in reliance upon § 5 of the Fourteenth Amendment alone. *Usery v. Charleston County School District*, 558 F.2d 1169 (4th Cir. 1977); *Usery v. Allegheny County Institution District*, 544 F.2d 148 (3rd Cir. 1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977). *Accord, National League of Cities v. Marshall*, 429 F.Supp. 703 (D.D.C.1977). *Cf. Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). See, generally, Comment, *Applying the Equal Pay Act to State and Local Governments: The Effect of National League of Cities v. Usery*, 125 U.Pa.L.Rev. 665 (1977).

Mrs. Pearce. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969). A verdict may be directed or a jury verdict overturned only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that . . . reasonable men could not arrive at a contrary verdict." *Id.* at 374.

■ A prima facie Equal Pay Act case requires a showing that the "employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). To establish "equal work," the employee need not prove that the duties performed are identical, but merely that the "skill, effort and responsibility" required in the performance of the jobs is "substantially equal." *Brennan v. City Stores, Inc.,* 479 F.2d 235, 238–39 (5th Cir. 1973). *See* 29 CFR § 800.122 (1977). The employees whose pay is the subject of comparison may hold jobs in succession as well as simultaneously. *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1049 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973). Thus, appellant has no cause to complain of the comparison between Mrs. Pearce and her successor, Mr. Martin.

Mrs. Pearce established that her salary upon termination was $310 less than the starting salary of Mr. Martin. Through the testimony of Mr. Clay Ellis, Hospital Administrator, Mrs. Pearce established that she and Mr. Martin performed their jobs under similar working conditions.[6] *See* 29 CFR § 800.131 (1977).

■ "Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job." 29 CFR § 800.127 (1977).[7] *See Hodgson v.*

*Brookhaven General Hospital,* 436 F.2d 719, 725 (5th Cir. 1970). The hospital Business Manager, Mr. Tritton, testified that upon Mrs. Pearce's departure, the Credit Department neither assumed additional tasks nor adopted new procedures.

"Skill includes consideration of such factors as experience, training, education, and ability." 29 CFR § 800.125 (1977). Mrs. Pearce had approximately twenty years of medical credit experience upon her termination. Mr. Martin had no prior medical credit experience before his appointment as Credit Manager. Both Mrs. Pearce and Mr. Martin had a high school education. Mr. Claude Buntyn, Business Manager of University Park Clinic, and Karen Robinson, a former hospital Credit Clerk, testified that Mrs. Pearce and Mr. Martin were of equal ability in administering the Credit Department of the hospital.

■ "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 CFR § 800.130 (1977). Although job titles are entitled to some weight in the assessment of comparative responsibility, "[t]he controlling factor under the Equal Pay Act is job content—the actual duties that the respective employees are called upon to perform." *Brookhaven General Hospital,* 436 F.2d at 724. The testimony of Mr. Tritton, the hospital Business Manager, and Karen Robinson, the former Credit Clerk, established that Mrs. Pearce and Mr. Martin had the same duties: the training and supervision of credit clerks and file clerks, and credit counseling and collection.

■ There was sufficient evidence that Mrs. Pearce received unequal pay vis-a-vis Mr. Martin for jobs performed under similar working conditions requiring equal skill, effort and responsibility. Once Mrs. Pearce

6. "[T]he element of working conditions encompasses two subfactors: 'surroundings' and 'hazards.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 202, 94 S.Ct. 2223, 2232, 41 L.Ed.2d 1 (1974).

7. While the regulations published by the Secretary of Labor interpreting the Equal Pay Act are not binding upon the courts, *Brennan v. City Stores, Inc.,* 479 F.2d 235, 239–40 (5th Cir. 1973), they should be given great weight, *Hodgson v. Security National Bank,* 460 F.2d 57, 59 (8th Cir. 1972).

met her burden of proof, the burden shifted to appellant to prove that the unequal pay was due to one of the Equal Pay Act's four exceptions: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality or production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1) (1976); *Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. at 2229. Appellant alleged that the wage differential between Mrs. Pearce's salary and that of Mr. Martin was due to a "factor other than sex," greater economic benefits to appellant from Mr. Martin's work. *See Hodgson v. Robert Hall Clothes, Inc.*, 473 F.2d 589 (3rd Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 50, 38 L.Ed.2d 85 (1973).

[10] Appellant supported the economic benefits justification for the pay differential with evidence that Mr. Martin increased collections by approximately $35,000 per month. Although the increased revenue collected by Mr. Martin might explain Mr. Martin's raises during the course of his employment, it does not justify the large gap between Mrs. Pearce's final salary and Mr. Martin's starting salary. *See Shultz v. First Victoria National Bank*, 420 F.2d 648, 655 (5th Cir. 1969).

■ Appellant's final argument is that the award of actual and liquidated damages was improper. Appellant submits that the award of actual damages compensated Mrs. Pearce for a time period greater than the statute of limitations. The statute of limitations is an affirmative defense. Fed.R. Civ.P. 8(c). Appellant did not raise the defense in its pleadings or in objection to the court's jury instructions. Indeed, appellant did not bring the issue to the court's attention until it presented a motion for judgment notwithstanding the verdict. Consequently, appellant has waived any objection to the limitations period. 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1278 (1969). *See Dunn v. Koehring Co.*, 546 F.2d 1193, 1199 (5th Cir. 1977).

■ Appellant contends that the district court abused its discretion in awarding liquidated damages, because the appellant acted in good faith. The damages for violation of the Equal Pay Act include back pay plus an equal amount as liquidated damages. 29 U.S.C. § 216(b) (1976). The court has discretion not to award liquidated damages under certain circumstances:

[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in § 216 of this title.

29 U.S.C. § 260 (1976).

The district court's finding that appellant failed to show good faith in violating the Equal Pay Act is not clearly erroneous. *See Laffey v. Northwest Airlines*, 185 U.S. App.D.C. 322, 357, 567 F.2d 429, 464 (1976). Appellant presented no evidence of an intention to ascertain what the Equal Pay Act requires and to act in accordance with it. *See Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1310 (5th Cir. 1976).

Even if appellant had made a showing of good faith, the district court would have retained discretion to award liquidated damages under § 260. *Laffey*, 567 F.2d at 465; *Employees of Missouri Dept. of Public Health & Welfare v. Missouri Dept. of Public Health & Welfare*, 452 F.2d 820, 826 (8th Cir. 1971), *aff'd*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1972).

Congressional extension of the Equal Pay Act to states and their subdivisions is a constitutional exercise of the commerce clause power. The evidence was sufficient to support the jury verdict that Mrs. Pearce was paid less than her male successor for performing under similar working conditions a job that required equal effort, skill and responsibility, because of her sex. The district court's award of liquidated damages was not an abuse of discretion. According-

ly, the judgment of the district court is affirmed.

AFFIRMED.